## FOX v. MOHAWK & H. R. HUMANE SOC.

(Supreme Court, Appellate Division, Third Department.    January 5, 1898.)

1. CONSTITUTIONAL LAW — DUE PROCESS OF LAW—CONFISCATION OF PROPERTY —DOG TAX.

Laws 1896, c. 448, gives to humane societies in certain cities the right. to collect a license of one dollar for each dog in said city, and, in case the owner fail or refuse to pay the license, to kill or confiscate the dog, but does not declare keeping an unlicensed dog a misdemeanor, nor that such dog is a nuisance. *Held* that, since dogs are property, said act is unconstitutional, for the reason that it provides for taking property without due process of law.

2. SAME—POLICE POWERS—ELIGIBILITY TO OFFICE.

Laws 1896, c. 448, giving to humane societies in certain cities the right to collect a license on dogs, and to kill or confiscate unlicensed dogs, vests in a private corporation the execution of certain police powers, and in effect makes it a public officer, and hence is unconstitutional, since the legislature could not appoint such officer, under. Const. art. 10, § 2, providing that "all city, town or village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, as the legislature shall designate for that purpose."

3. SAME—PRIVATE CORPORATION—ELIGIBILITY TO OFFICE.

Since it cannot take an oath of office, and has no moral qualities, a corporation is not eligible to any public office.

4. SAME—HUMANE SOCIETIES—PEACE OFFICERS.

In an action against a humane society for usurping police powers, where no officer of the society is a party, the question as to whether Pen. Code, § 668, constituting the officers of such societies "peace officers," is constitutional, is immaterial.

5. SAME—POLICE POWERS—SUBORDINATE GOVERNMENTAL AGENCY.

Laws 1896, c. 448, giving to the humane society in certain cities the right to collect a license on dogs, and to kill or confiscate unlicensed dogs, since it vests in such corporation power to render services that are not merely incidental to the execution of the powers of some other official department, does not constitute it a "subordinate governmental agency."

Appeal from trial term, Albany county.

Action by Frederick Fox to restrain the Mohawk & Hudson River Humane Society from confiscating or killing his dogs.    From a judgment for defendant, plaintiff appeals.    Reversed.

The plaintiff, the owner of four valuable dogs within the corporate limits of the city of Albany, refused to take or pay the defendant for a license for his dogs, and brought this action to restrain the defendant from seizing, killing, or disposing of them, which the defendant, because of plaintiff's refusal, was about to do.    The defendant is a corporation, created by and under chapter 292, Laws 1894, having its principal place of business in the city of Albany, and having the powers given generally to societies for the prevention of cruelty to children and to societies for the prevention of cruelty to animals.    Chapter 448, Laws 1896, purports to confer upon the defendant the powers which it threatens to exercise in respect to plaintiff's dogs.    The plaintiff challenges the constitutionality of the act.    The act is as follows:

"An act for the prevention of cruelty to animals, and empowering certain societies for the prevention of cruelty to animals to do certain things.    Became a law May 9, 1896, with the approval of the governor.    Passed, three-fifths being present.

"The people of the state of New York, represented in senate and assembly, do enact as follows:

"Section 1. Every person, who owns or harbors one or more dogs within the corporate limits of any city having a population of more than twenty thou-

sand and less than eight hundred thousand, where a duly incorporated society exists, or may hereafter exist, for the prevention of cruelty to animals, except in the city of Buffalo, shall procure the yearly license for each animal, paying the sum of one dollar for each one, as hereinafter provided; in applying for such license the owner shall state in writing the name, sex, breed, age, color and markings of the dog for which a license is to be procured.

"Sec. 2. Licenses granted under this act shall date from the first day of May in each year, and must be renewed prior to the expiration of the term by the payment of one dollar for each renewal.

"Sec. 3. Each certificate of license or renewal shall state the name or address of the owner of the dog, and also the number of such license or renewal.

"Sec. 4. Every dog so licensed shall, at all times, have a collar about its neck, with a metal tag attached thereto, bearing the number of the license stamped thereon. Such tag shall be supplied to the owner with the certificate of license and shall be of such form and design as the society empowered to carry out the provisions of this act shall designate; duplicate tags may be issued only on proof of loss of the original, and the payment of the sum of one dollar therefor.

"Sec. 5. Dogs not licensed pursuant to the provisions of this act shall be seized, and if not redeemed within forty-eight hours, may be destroyed or otherwise disposed of at the discretion of the society empowered and authorized to carry out the provisions of this act.

"Sec. 6. Any person claiming any dog, seized under the provisions of this act, and proving ownership thereof, shall be entitled to resume possession of the animal on the payment of the sum of two dollars: provided, however, that such claim shall be made before the expiration of the forty-eight hours provided in section five.

"Sec. 7. The incorporated society, organized for the prevention of cruelty to animals, and having jurisdiction in either of such cities, is hereby empowered and authorized to carry out the provisions of this act; and such society is further authorized to issue licenses and renewals, and to collect the fees for such, as is herein prescribed, which fees are to be used by such society towards defraying the cost of carrying out the provisions of this act and maintaining a shelter for lost, strayed or homeless animals, and for its own purposes.

"Sec. 8. Any person or persons who shall hinder, molest or interfere with any officer or agent of such society while in the performance of any duty enjoined by this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall pay a fine of not less than twenty-five dollars nor more than one hundred dollars, or be imprisoned for not less than ten days or more than thirty days, or be punished by both such fine and imprisonment.

"Sec. 9. None of the provisions of this act shall apply to dogs owned by non-residents passing through any city, nor to dogs brought to any city and entered for exhibition at any dog show.

"Sec. 10. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed.

"Sec. 11. This act shall take effect immediately."

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

J. S. Frost, for appellant.
M. T. Hun, for respondent.

LANDON, J. This case differs from People v. Gillespie (herewith decided) 48 N. Y. Supp. 882. There the question was whether the owner of a dog, upon which he had paid the tax, was deprived of due process of law, in respect of the penalty declared by section 125 of the county law, upon his refusal to obey the order of a justice of the peace directing him to kill his dog immediately. We held that he was not, because, upon being sued for the penalty, he would

have his day in court upon all the material facts.    Here the plaintiff's dogs are not alleged to be dangerous, he refuses to buy a license for them from the defendant, and the defendant, because of his refusal, threatens to kill the dogs or confiscate them.

The field of the defendant's jurisdiction is the city of Albany. The county law, which provides for the taxation of dogs, by section 111 exempts the city of Albany from its provisions. Chapter 448, Laws 1896, requires the owner of every dog within the city to procure a yearly license for it, and pay the defendant one dollar therefor, under penalty, upon refusal, of death to the dog or its confiscation, and vests the execution of the law and the proceeds of the license or sale of the dog in the defendant. No doubt the legislature may enact that no one shall keep a dog unless licensed to do so, in like manner as it may enact that no one shall sell liquor unless licensed to do so. That this is a proper exercise of the police power is well settled. But the important question here is: Suppose he refuses to take out a license for his dog; can the dog be summarily killed or confiscated without any process of law whatever?

When the law of the state was that dogs were not prima facie property, but must be proved to be valuable before they could be treated as such, it followed that the killing or confiscation of a dog, prima facie, affected no property right, and was no legal grievance. Sentell v. Railroad Co., 166 U. S. 698, 17 Sup. Ct. 693. But now dogs in this state are property (Mullaly v. People, 86 N. Y. 365), and, of course, within the laws for the protection of property. If one sells liquor without a license, the liquor, in the absence of a law, enacted before it was procured, declaring it to be a nuisance per se, cannot be confiscated in this state without due process of law. Wynehamer v. People, 13 N. Y. 378. It is true that certain instruments and appliances found in use in violation of law, as fishing nets in prohibited waters,—i. e. in flagrante delicto,—may be destroyed as nuisances by the proper officer (not by any corporation), provided they are of small value (Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878; Id., 152 U. S. 133, 14 Sup. Ct. 499), but if of considerable value, as a bawdyhouse or a smuggling vessel, cannot be destroyed without due process of law (Id.),—a distinction which may be right, however much we may doubt that the right differs with difference in values.

Now, it is plain that whether a dog is licensed or not does not affect its character. A good dog is none the less so, though it wear no collar. The statute of 1896 does not declare the keeping of an unlicensed dog a misdemeanor, nor does it declare that the dog that wears no collar is presumptively a nuisance. The plaintiff does not put his dogs to an improper use. They are neither vicious nor dangerous. There is, therefore, no ground upon which we can assume that the plaintiff's dogs are a nuisance; and hence the defendant's right to kill them must rest upon some other basis, or be denied altogether. Unlike the county law, the act of 1896 prescribes no money penalty for plaintiff's refusal to take out a license for his dogs. If we assume that the killing or confiscation of the plaintiff's dogs is the penalty prescribed for his disobedience of the statute, then the same reasons which entitle him to his day in court before a penalty

·in money can be exacted apply before the penalty in dogs can be ex-
·acted. In neither case can he be deprived of his property without
·due process of .law. The currency in which the penalty is exacted
cannot affect the principle.

But there is another ground upon which we think the plaintiff can
rest his action. The act of 1896 assumes to vest in the defendant,
a private corporation, the execution of certain police powers of the
state, and thus, in effect, to make the defendant a public officer. The
·constitution of the state provides for the election and appointment of
certain officers, and vests the legislature with power to provide for
·the election or appointment of the rest. "All city, town or village of-
ficers whose election or appointment is not provided for by this con-
·stitution, shall be elected by the electors of such cities, towns and
villages, or of some division thereof, or appointed by such authorities
thereof, as the legislature shall designate for that purpose." Const.
art. 10, § 2. If a corporation were eligible to a city office, the legis-
lature could not appoint it. But a corporation is not eligible to any
public office, for· the reasons, if there were no others, that it cannot
take the oath of office,—that it is not a human, but a legal, being.
It has legal attributes only, and the law cannot attribute to it moral
qualities, although it may try to secure some respect for them under·
penalties which touch its pocket or franchise. It is obvious that the
execution of police regulations, which affect the life, liberty, property,
health, and happiness of human beings, should be vested in human
beings, and not in such legal entities as cannot be endowed with moral
qualities, and cannot be adequately punished for official misconduct.

It is true, as the defendant contends, that the Penal Code (section
668) provides:

"The officers and agents of all duly incorporated societies for the prevention
of cruelty to animals are hereby declared to be peace officers within the pro-
visions of section 154 of the Code of Criminal Procedure."

Section 154 provides that:

"A peace officer is a sheriff of a county, or his under sheriff, or deputy, or a
constable, marshal, police constable or policeman of a city, town, or village."

Whether the officers or agents of the defendant, within the terms of
the constitution above cited, can thus be appointed peace officers, we
need not inquire, since none of them is a party to this action, and the
·defendant does not justify under any of them.

The defendant contends, however, that chapter 448, Laws 1896, un-
·der which it claims the powers here called in question, creates it a
"subordinate governmental agency." If by that assumed designa-
tion it is meant that, without being a police or peace officer, it can
nevertheless execute the police powers conferred by the act, then it
is incumbent upon us to discover whether such powers are official
powers, or the mere incident of them, such as the officer or department
charged with the execution of the main power may delegate to a non-
official subordinate, servant, or helper.

There is no doubt that public officers can, in many cases, employ
corporations to do work for the government. Thus, banks or trust
companies can be made fiscal agents for the custody of public or trust

moneys to be disbursed upon proper official vouchers. Mails and government property may be transported by railroad companies. Corporations may become contractors for public works. Water, gas, and electric companies can supply the government with their products or services. Such matters are regulated by contract, or by statutes or statutory regulations having the force of a contract. The government, in the discharge of its duties, must be the employer of various kinds of service or labor, from that of the common laborer to that of the expert in art and science; but the employment of such persons is, with possibly rare exceptions, committed by law to some officer or department. Within the restrictions imposed by the constitution, the state may dispense charity through the medium of the private charitable corporations selected by it. Such corporations or persons thus employed may, perhaps without impropriety, be designated as "subordinate governmental agencies." In the police department, if it is necessary to kill dogs, perhaps the proper officer can employ some one for the purpose, and thus we would have another instance of "subordinate governmental agency," differing in dignity and degree from those first mentioned, but not in principle.

In Trustees v. Roome, 93 N. Y. 313, a case much relied upon by the defendant, the phrase "subordinate governmental agency" was applied to the plaintiff as justifying its right to receive a license fee or tax which the state had imposed upon certain foreign insurance companies doing business in the city of New York, as the price of admitting them to the privilege of doing business within this state. The right of the state to impose the tax or license fee for its own purposes was held to be clear. The right of the plaintiff to receive and use it for its own corporate purposes was challenged, among other reasons, because it was a gift of public money to a corporation, and thus forbidden by the constitution. Const. art. 8, § 9. The court held that it was not a gift, but a payment by the state to the exempt firemen, members of the plaintiff corporation, of the money the state morally owed them for their past services, and thus an appropriation to the public use, and that, in giving the money to the corporation, the state selected it as "a subordinate governmental agency, employed by the state to fulfill its obligations due to the exempt firemen for the service they had rendered at the request and by the procurement of the state." It is obvious that the corporation plaintiff in that case had simply the function of collecting certain moneys appropriated to it, and applying them to the uses of the exempt firemen, members of the corporation. In this sense, the term "subordinate governmental agency" has a meaning much too narrow to cover the functions which the act of 1896 seeks to confer upon the defendant.

The defendant, by its answer, alleges "that the defendant has and has exercised, and at the time of the commencement of this action was and now is exercising, certain police powers conferred upon it by the statutes of the state of New York, and more particularly by article 5 of chapter 559 of the Laws of the State of New York of 1895, and by section 668 of the Penal Code of the State of New York"; "that this society has entered upon the execution of the duties prescribed by chapter 448 of the Laws of 1896, providing for the licensing

of dogs." The defendant admitted, upon the trial, "that defendant, unless restrained by order of the court, will seize and destroy or otherwise dispose of the property of the plaintiff." Under the act of 1896, no dog in the city of Albany has a prima facie right to live unless it wears the collar of the defendant. No person has the right to own or harbor ·a dog except licensed by defendant. By paying the defendant one dollar, a person can get a license for his dog, however mad, vicious, or diseased it may be. If he does not choose to pay, the defendant can confiscate the dog, unless redeemed within 48 hours by paying two dollars. The defendant need not kill the dogs it confiscates, but may sell them, and the defendant can manage its business upon a basis the most thrifty for itself, thus placing the public service at the mercy of corporate interests. It is thus seen that the powers assumed to be vested in the defendant are not merely to render services incidental to the execution of the powers of some other official department, such as the receipt of a tax which the defendant ought to pay, but they embrace the execution of all the powers which the state has suspended over the plaintiff's rights and liberties in respect to his keeeping this kind of property, including those of a discretionary kind authorizing its destruction or sale,—in short, police powers. The grant of a license is the exercise of sovereign power. To require the individual to pray a private corporation for a sovereign favor seems to be contrary to the fundamental principles of popular government. No attempt was made in the case cited to seize or confiscate the plaintiff's property without giving him his day in court. The phrase "subordinate governmental agency," which was there used with great hesitation and caution, would be misapplied and abused if perverted into a justification of the corporate invasion of the people's right to be governed by officers chosen from among themselves, and from the like invasion of their right to be secure from deprivation of their property without due process of law. We have no doubt the defendant is a most worthy institution, but, however great its merits, they cannot obscure the vice of such legislation.

For these reasons, without passing upon others urged by the plaintiff, we think the judgment should be reversed, and judgment directed for the plaintiff. If, however, the defendant request a new trial, in place of the direction for judgment, the order may be so entered. Costs to abide the event. All concur.