THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE BROOKLYN COOPERAGE COMPANY, Appellant, Impleaded with Another.

1. FOREST PRESERVE — SUFFICIENCY OF COMPLAINT IN ACTION TO RESTRAIN WASTE ON LANDS ACQUIRED BY CORNELL UNIVERSITY FOR A COLLEGE OF FORESTRY, UNDER CHAPTER 122, LAWS OF 1898.   In an action by the state against a private corporation and Cornell University to enjoin a waste of lands acquired by such university under and subject to the provisions of chapter 122 of the Laws of 1898, which authorized the university to establish a department of forestry and provided for the purchase of lands for that purpose by the state, title to be taken by the university and held by it for thirty years, at the expiration of which period the lands should be conveyed to the state as part of the forest preserve, the complaint alleged in effect that the university acquired the lands in question, the purchase price therefor being paid by the state; that thereafter the university entered into a contract with the corporation for a term of years whereby the latter agreed to manufacture lumber cut on said lands by the university, to be furnished "as the company may give written notice that it shall require to be cut during the next following season;" that the university had thereafter abandoned its department of forestry, but that both parties continue and threaten to continue the performance of such contract, which will denude the lands of their forests, to the irreparable damage of the plaintiff, the relief demanded being that the validity of such statute and contract be determined, that an injunction issue restraining the defendants from cutting any timber upon such lands or removing any therefrom, and that the plaintiff be adjudged the equitable owner thereof, and as such entitled to the possession of the same.   Held, that the complaint stated a cause of action.

2. CONSTITUTIONAL LAW — ACT NOT VIOLATIVE OF FOREST PRESERVE SECTION OF THE CONSTITUITON.   A contention that the act is violative of section 7 of article 7 of the Constitution providing that "The lands of the state now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands.

They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed," is without force, for the reason that the state has never been vested with the legal title and, therefore, the provision cited has no application.

3. ACT NOT VIOLATIVE OF CONSTITUTIONAL PROHIBITION AGAINST GIVING OR LOANING MONEY OR CREDIT OF THE STATE. Nor is the act violative of section 9 of article 8 of the Constitution prohibiting the giving or loaning of the credit or money of the state, etc.; since it is a public statute, the sole object of which is to promote education in the art of forestry, providing a perfect scheme of state control, and constituting the university, which is a non-sectarian educational institution, a subordinate governmental agency which undertakes to render services to the state in consideration of appropriations made.

*People* v. *Brooklyn Cooperage Co.*, 114 App. Div. 723, affirmed.

(Argued December 19, 1906; decided January 8, 1907.)

APPEAL, by permission, from a judgment entered August 7, 1906, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The nature of the action, the facts, so far as material, and the question certified are stated in the opinion.

*Edward M. Shepard* for appellant. The validity of the contract between the cooperage company and the university is to be determined as of the date — May 5, 1900 — when it was made. If it can be performed lawfully it will be held valid. (*Shedlinsky* v. *B. B. Co.*, 163 N. Y. 437; *Lorillard* v. *Clyde*, 86 N. Y. 384; *E. L. Co.* v. *S. B. Co.*, 54 App. Div. 518; *Cohen* v. *B. & J. E. Co.*, 9 App. Div. 425; *Guggenheimer* v. *Geiszler*, 81 N. Y. 292; *Rosenstein* v. *Fox*, 150 N. Y. 354; *White* v. *Benjamin*, 128 N. Y. 623; *De Groot* v. *Van Duzer*, 17 Wend. 170; *Dowley* v. *Schiffer*, 13 N. Y. Supp. 552; *Dunham* v. *H. P. Co.*, 57 App. Div. 426.) The act of 1898 was constitutional. (*Koch* v. *Mayor, etc.*, 152 N. Y. 72; *Fox* v. *M. & H. R. H. Society*, 165· N. Y. 517; *People* v. *N. Y. Society*, 161 N. Y. 233; *Trustees, etc.*, v. *Roome*, 93 N. Y. 313.) The act of 1898 did not forbid — on

the contrary, it authorized — the university to make the contract of May, 1900. (*People* v. *Collins,* 19 Wend. 56; *People* v. *Denslow,* 1 Caines, 176; *Allen* v. *Blunt,* 3 Story, 742; *People ex rel. Wooster* v. *Maher,* 141 N. Y. 330; *People* v. *Broome,* 20 N. Y. Supp. 470; *Talcott* v. *City of Buffalo,* 125 N. Y. 280; *E. R. R. Co.* v. *City of Buffalo,* 96 App. Div. 458; *Hearst* v. *McClellan,* 102 App. Div. 336.) It was competent for the state to contract with Cornell University as a governmental agency under the act of 1898, in consideration of its performance of experimental and educational work, to pay the cost of land or of other necessary implements for experiments which should belong to the university. Payment by the state for land under such a contract was not more a gift than payment for tools or supplies to be used in such work would be a gift. (L. 1894, ch. 183; L. 1893, ch. 126; L. 1894, ch. 675.)

*Julius M. Mayer, Attorney-General* (*Edward B. Whitney* and *John G. Agar* of counsel), for respondent. The Brooklyn Cooperage Company never had any lawful rights in this property, for its contract with Cornell University was unauthorized by the statute, and was void as involving an unlawful delegation of power. (*Trustees, etc.,* v. *Roome,* 93 N. Y. 313; *Fox* v. *M. & H. R. H. Society,* 25 App. Div. 26; 165 N. Y. 517; *Davis* v. *Mayor, etc.,* 14 N. Y. 506; *Milhau* v. *Sharp,* 27 N. Y. 611; *Presbyterian Church* v. *Mayor, etc.,* 5 Cow. 538; *B. E. S. R. R. Co.* v. *B. S. R. R. Co.,* 111 N. Y. 132; *People* v. *Squire,* 107 N. Y. 593; *Gale* v. *Village of Kalamazoo,* 23 Mich. 344; 116 N. Y. 181; *Matthews* v. *City of Alexandria,* 68 Mo. 115, 119; *Lord* v. *City of Onconto,* 47 Wis. 386.) Defendant's case must fail on account of the unconstitutionality of the statute of 1898. (*People* v. *Supervisors,* 52 N. Y. 556; *Poindexter* v. *Greenhow,* 114 U. S. 270; *Ex parte Siebold,* 100 U. S. 371; *Norton* v. *Shelby County,* 118 U. S. 425; *Huntington* v. *Worthen,* 120 U. S. 97; *Parkersburg* v. *Brown,* 106 U. S. 487.) The statute is not sustainable upon the theory of a grant to Cor-

nell University as an independent educational institution. (*Fairbanks* v. *U. S.*, 181 U. S. 283 ; *Knight* v. *Shelton*, 134 Fed. Rep. 423 ; *Levin* v. *U. S.*, 128 Fed. Rep. 826 ; *People ex rel. Joyce* v. *Brundage*, 78 N. Y. 403 ; *People* v. *Allen*, 42 N. Y. 378 ; *Newell* v. *People*, 7 N. Y. 9.)   The statute is not sustainable upon the alternative theory that the title to the college forest was put into Cornell University as a subordinate governmental agency.   (*People* v. *Hawkins*, 157 N. Y. 1 ; *Hannah* v. *People*, 198 Ill. 77 ; 1 Story on Const. § 427 ; *People* v. *Suprs.*, 147 N. Y. 1 ; *Matter of Keymer*, 148 N. Y. 219.)

Edward T. Bartlett, J.   This appeal is allowed by the Appellate Division, and the following question certified : "Does the complaint herein state facts sufficient to constitute a cause of action ? "

The defendant, Cornell University, was created a corporation under the Laws of 1865, chapter 585 ; section four reads in part as follows : " The leading object of the corporation hereby created shall be to teach such branches of learning as are related to agriculture and the mechanic arts, including military tactics ; in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life.   But such other branches of science and knowledge may be embraced in the plan of instruction and investigation pertaining to the university as the trustees may deem useful and proper."

An act was passed in 1898 (Chap. 122) entitled " An act to promote education in forestry, to encourage and provide for the establishment of a college of forestry at Cornell University, and making an appropriation therefor."   The act provides : " Section 1.   Upon the acceptance by Cornell University of the provisions of this act, which acceptance in writing duly executed and acknowledged in the manner provided by law for the execution of written instruments by corporations, shall be filed in the office of the secretary of state within ten days after the approval of this act, the trustees of Cornell University are authorized and empowered to create and estab-

10

lish a department in said University to be known as and called the New York State College of Forestry for the purpose of education and instruction in the principles and practices of scientific forestry." " Section 2. For the purposes of such school and for carrying out the objects of this act, the board of trustees of said University are hereby authorized and empowered, by and with the consent and approval and under the direction of the forest preserve board of this state, to contract for the purchase of, and to purchase and to acquire by purchase title to not more than thirty thousand acres of land in the Adirondack forests. The University shall have the title, possession, management and control of such land, and by its board of trustees through the aforesaid College of Forestry shall conduct upon said land such experiments in forestry as it may deem most advantageous to the interests of the state and the advancement of the science of forestry, and may plant, raise, cut and sell timber at such times, of such species and quantities and in such manner, as it may deem best, with a view to obtaining and imparting knowledge concerning the scientific management and use of forests, their regulation and administration, the production, harvesting and reproduction of wood crops and earning a revenue therefrom, and to that end may constitute and appoint a faculty of such school, consisting of one director or professor, and two instructors, and may employ such forest manager, rangers and superintendents, and incur such other expenses in connection therewith as may be necessary for the proper management and conduct of said college and the care of said lands and for the purposes of this act, within the amount hereinafter appropriated." " Section 4. Every deed or conveyance of lands acquired under the provisions of this act by said University shall contain in the habendum clause thereof a condition and covenant that the same, and the title to the land conveyed therein and thereby, is taken by the grantee therein named, the Cornell University, under and pursuant to the provisions of this act; and shall also contain an express covenant running with the land and binding upon said Uni-

1907.]    PEOPLE *v.* BROOKLYN COOPERAGE CO.    **147**

N. Y. Rep.]    Opinion of the Court, per EDWARD T. BARTLETT, J.

versity, that the same is conveyed for the uses and purposes in this act provided for, and also an express covenant on the part of said University to convey said lands to the people of the state as hereinafter provided for. Every such conveyance shall be executed in duplicate, one of which shall be recorded in the office of the clerk of the county where the land is situated, and the other in the office of the secretary of state." Section 5 provides in detail for payment by the state of the consideration for the lands so contracted to be purchased. Section 6 and section 7, as amended in 1900 (Chap. 301), provide for the custody and expenditure of appropriations and proceeds from the sale of timber, the same being under state control. " Section 8. Subject only to the powers, duties and responsibilities vested in or imposed upon the trustees of Cornell University by this act, and except as may be inconsistent with this act and the objects and purposes herein provided for, the land so purchased shall be deemed to be and shall be regarded as a part of the forest preserve, so far as may be necessary for the protection of fish, game and forests · as prescribed by the fish, game and forest law and the jurisdiction, supervision, powers, duties and responsibilities of the Fish, Game and Forest Commission, and of fish and game protectors and foresters, authorized by the Fish, Game and Forest Law, except as may be inconsistent with the provisions of this act, shall extend and apply to the land so purchased hereunder for the purposes of this act." Section 9 reads, in part, as follows : " Upon and at the expiration of thirty years from and after the taking effect of this act, all lands and each and every part and parcel thereof, purchased by said University, and paid for by the state under and pursuant to the provisions of this act, shall be by the board of trustees of said University, or its successors, granted and conveyed to the people of the state of New York by a good and sufficient deed of conveyance, without further price or consideration therefor, and the same shall thereupon be and become a part of the forest preserve."

The complaint alleges that the Brooklyn Cooperage Com-

pany and Cornell University are domestic corporations; that on or about December 21st, 1898, by its deed bearing date on that day, the Santa Clara Lumber Company conveyed to the defendant, Cornell University, about thirty thousand acres of land in the county of Franklin, state of New York, most of which was then covered with forests; a copy of said deed is annexed to the complaint and made a part of it; that the university shortly thereafter took possession of the lands so conveyed; that the deed was recorded in the office of the clerk of Franklin county and in the office of the secretary of state. The deed reads, in part, as follows: "And this conveyance is taken by the party of the second part upon condition that the same and the title to the land herein and hereby conveyed is taken by said party of the second part under and pursuant to the provisions of chapter 122 of the Laws of 1898, entitled 'An act to promote education in forestry, to encourage and provide for the establishment of a college of forestry at Cornell University, and making an appropriation therefor,' and the party of the second part covenants that this conveyance and the title to the land herein and hereby conveyed is taken by said party of the second part under and pursuant to the provisions of said chapter 122 of the Laws of 1898." Then follows a covenant that the land conveyed to the party of the second part is for the uses and purposes of the said act of 1898, and that the covenant shall run with the land. Following is a covenant that the university will convey to the state in thirty years from the taking effect of the said act of 1898 as therein provided.

It is further alleged that the university accepted the provisions of the act of 1898 (Chap. 122); that after acceptance, and prior to the conveyance, the trustees of the university had created and established a department therein known as and called the New York State College of Forestry, being the college referred to in the first section of chapter 122 of the Laws of 1898, for the purposes of education and instruction in the principles and practices of scientific forestry; and thereafter and also prior to said conveyance the board

of trustees of said university for the purposes of such school and for carrying out the objects of said act, and with the consent and approval and under the direction of the forest preserve board of this state had contracted for the purchase of the land aforesaid. The remainder of the complaint reads as follows: " V. The sole consideration paid for the conveyance aforesaid (other than the considerations, if any, contained or implied in the conditions and covenants of the deed), was the sum of one hundred and sixty-five thousand dollars ($165,000.00), which entire sum was paid to the Santa Clara Lumber Company by the Treasurer of the State of New York from moneys in the state treasury." The remainder of this section is not material at this time. " VI. Thereafter, and on or about May 5, 1900, the defendant, Cornell University, and the trustees of said University, entered into a written contract with the defendant, the Brooklyn Cooperage Company, a copy whereof is hereto annexed as a part of this complaint and marked 'Exhibit C.' Said company thereafter constructed one or more factories on or near said land and constructed a railroad through said land, and said University commenced to cut and deliver wood and timber to said company, and thereafter and for a long period and until the date hereinafter mentioned continued such cutting and delivery, thus clearing a portion of the land of its forests and only replanting a small fraction of the land so cleared, the rest remaining still denuded at the present time. At the time of making the contract it was the declared intention and expectation of the defendant, Cornell University, from year to year as the old timber standing on said tract should be removed and for the purpose of forestry education and experiment, to replant the said tract thus cleared in successive sections with seedlings. VII. The expense of cutting and delivering timber to the Brooklyn Cooperage Company under the terms of said contract in the practical operation proved to be so great that no profit was derived therefrom by Cornell University. No funds were provided by the University or otherwise for the planting or raising of trees on the land aforesaid

or for the conducting upon said land of any experiments in forestry or for the maintenance of the New York State College of Forestry, except out of certain appropriations made by the Legislature of this State, and said appropriations ceased in 1902. Thereafter, and in or about the month of June, 1903, Cornell University discontinued and abandoned the maintenance of said college, and since that date has planted nothing and made no attempt to conduct experiments of any kind upon the land aforesaid, but still remains in possession thereof. VIII. The defendant, Cornell University, has under the said contract been required by the defendant Cooperage Company to cut timber under the said contract and thereunder deliver the same to the said Cooperage Company, and in pursuance of such contract and notice the defendant, Cornell University, threatens to cut, remove and deliver, or if it shall not do so, the defendant Brooklyn Cooperage Company threatens to cut and remove large quantities of timber from said lands, the defendants claiming notwithstanding the facts aforesaid the right so to do under said contract 'Exhibit C.' IX. The effect of the actions and omissions aforesaid, if permitted, will be to denude said lands of their present forests and leave them either entirely denuded, or, so far as not denuded, occupied by a growth of vegetation of comparatively little value, and to do irreparable injury to the plaintiffs for which damages would not be adequate compensation, while the recovery of damages would involve a multiplicity of actions; and plaintiffs are advised and believe that the land belongs in equity to them, and desire an adjudication by this court of the equitable title thereto. Wherefore, plaintiffs submit to the court the question of the validity or invalidity of the statute and contract hereinbefore mentioned, and demand judgment enjoining and restricting the defendants from cutting any timber upon said land or removing any timber therefrom, and declaring and adjudging that plaintiffs are the equitable owners thereof and entitled as such to possession of the same, and for such other or further relief, or both, as may be just, together with the costs of this action."

1907.]      PEOPLE v. BROOKLYN COOPERAGE CO.      151

N. Y. Rep.]   Opinion of the Court, per EDWARD T. BARTLETT, J.

The contract between the cooperage company and the university is annexed to and made part of the complaint. It is necessary to read certain of its provisions in connection with the allegations of the complaint in order to determine whether the university, as agent of the state, has apparently exceeded its authority. The contract opens with the following recitations: " Whereas, the University has the right during the period of thirty years from the 21st day of December, 1898, and desires to cut, remove and dispose of such wood and timber located upon thirty thousand acres of land in Franklin county, New York (hereinafter called the College Forest), as the University deems desirable under proper forestry system, and also has the right during such period to lease the same, or any part thereof, for such purposes and upon such terms as to the University shall seem best; and, whereas, the company, with a view of utilizing such wood and timber and in order to enable the University to dispose of the same, proposes to place upon the College Forest two or more plants for the manufacture of staves and headings and the products of wood distillation." Subdivision first, the greater part of which is immaterial at this time, contains the following significant provision : " The company may produce and use electricity or other agents for fire, heating, lighting or telephone service for the use of its plants or for other uses of the College Forest, or for any use of any adjoining tracts, provided, however, that no such use shall be permitted which shall be inconsistent with the purposes for which the College Forest has been acquired by the University." The following sentence is found in subdivision second : " Subject to the conditions and exceptions hereinafter contained, the company shall have the right to take and use all the maple, beech and birch wood and timber of merchantable trees now upon the College Forest, and also such spruce and other soft woods as under proper forestry management it shall become proper to cut; but the University may in its discretion reserve all or any of the timber standing alongside of rivers, streams, etc." Subdivision eighth reads : " Nothing in this agreement shall be construed

as limiting the University in the management of its property in any way, except so far as herein stated; and all reasonable rules and regulations for the safety of the property, and especially with regard to danger from fires, promulgated by the University or by the Forest, Fish and Game Commission, must be observed by the company, and the company especially agrees that no deleterious substances resulting in its opera-. tions shall be allowed to run into rivers or water courses or lakes."

These recitations and provisions clearly show that the cooperage company entered into the contract with full knowledge of the fact that the university represented the state under a restricted agency, and that the entire property involved was the college forest under the act of 1898. A person dealing with an agent whose powers are special and restricted, of which fact he has notice, contracts with him at his peril, and is bound by the provisions of the act of the legislature or written instrument from which he derives his authority.

The provisions of the contract above quoted, and others that are found in the instrument, disclose the fact that the university in making the contract was acting as the special agent of the state, and seeking to carry out, as the act of 1898 commanded, the advancement of the science of forestry, and to exercise in a proper manner its power to sell timber at such times, of such species and quantities in such manner as it deemed best, with a view to obtaining and imparting knowledge concerning the scientific management and uses of forests, their regulation and administration, the production, harvesting and reproduction of wood crops and earning a revenue therefrom.

The third subdivision of the contract reads, in part, as follows: " The company agrees to take and the University agrees to cut and deliver at its own expense, in each and every year of the term of fifteen years of this agreement, such quantities of wood in logs and cord wood *as the company may give written notice that it shall require to be cut* during the

next following season, such notice to be given not later than the first day of July in each year, provided that the University shall not be obliged to cut in any one year more than one-fifteenth of the wood standing on the College Forest. Nor shall it be required in any one year, except as hereinafter provided, to cut less than ten thousand cords of fuel wood and retort wood, together with the logs produced in the cutting of such cord wood.    At no time shall the University be obliged to cut and deliver a larger amount of logs than can be secured from the trees necessary to be cut in order to supply the quantities of cord wood required and taken by the Cooperage Company."

In this most important subdivision of the contract the company agrees to take and the university to deliver at its own expense, for a period of fifteen years, such amount of wood as the company shall give written notice it requires, provided the amount shall not exceed yearly more than one-fifteenth of the wood standing on the college forest.

It is argued by the counsel for the state that this provision of the contract amounts to a delegation by the university to the cooperage company of certain discretionary powers vested in the university to such an extent as to frustrate the objects of the New York State College of Forestry.   We have here a covenant on the part of the university to cut and deliver at its own expense, in each and every year for the term of fifteen years, the life of the contract, such quantities of wood in logs and cord wood as the company may give written notice that it shall require to be cut during the next following season. The only limitation upon this absolute power of the company to dictate the amount of wood to be cut is the proviso that it shall not exceed one-fifteenth of the wood standing on this large tract of thirty thousand acres.   The covenant in question is one that might be entered into by the absolute owner of forest property who is desirous of clearing the same by annual sales of timber.   In the light of this sweeping covenant it is for the court to determine, after trial and a full knowledge of all the surrounding circumstances, its effect upon the rights of the parties.

The complaint alleges in this connection (subd. VI) that such cutting and delivery had the effect of " clearing a portion of the land of its forest and only replanting a small portion of the land so cleared, the rest remaing so denuded at the present time." Also (subd. VII) " that the expense of cutting and delivering timber to the Brooklyn Cooperage Company under the terms of said contract in the practical operation proved to be so great that no profit was derived therefrom by Cornell University." The complaint also alleges (subd. VIII) that the university has been given notice by the company to cut and deliver the wood required by the contract, and that the university threatens to comply with the notice; that the company also threatens to cut and remove large quantities of timber from the land if the university fails to comply with the notice. The complaint alleges (subd. IX) that the effect will be either to entirely denude the land, or if not denuded it will be occupied by a growth of little value, to the irreparable injury of plaintiff. We have here statements of what has been done and what is contemplated to be done.

We do not agree with the contention of the learned counsel for the cooperage company that our construction of this contract is to be determined as of the date when made, May 5th, 1900. We are undoubtedly called upon to determine its validity at that time, but we are also to consider the manner of its performance. There can be no doubt that subdivision third of the contract confers upon the company powers hostile to the general scheme of the act of 1898. The parties have attempted to perform this contract, and it is alleged that the state and the university abandoned performance several years since. We thus have presented the situation where the rights of the parties can only be properly protected by a trial in which all the facts bearing upon the controversy can be elicited and considered.

Our attention is called to the fact that the legislature, upon investigation, after several years of operation under the contract, condemned both present and prospective results and stated that in its opinion the existing contract which requires the total destruction of from five to eight hundred acres of

forests every year should be abrogated. The court can doubtless take judicial notice of the statutes enacted and reports made by the legislature of this state, but as we are required to pass only upon the validity of the complaint, as aided by the documents forming a part of it, this rule has no application; this action of the legislature is not before us. Cornell University did not join in the demurrer, but is obviously interested in framing issues if a trial is to be had. We are of opinion that the complaint states facts sufficient to constitute a cause of action, and answer the question certified in the affirmative.

It remains to consider whether the act of 1898 (Chap. 122) is constitutional. The point is raised by the learned counsel representing the state. It was not passed upon by the courts below, but as counsel seemingly join in the request that the validity of the act be considered, we will examine the question. Its constitutionality is attacked on two grounds. The first ground is that it violates article VII, section 7, of the State Constitution, which reads as follows: "The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed."

The contention of the counsel for the state may be briefly summarized: That between the state and Cornell University the latter obtained a bare legal title from the Santa Clara Lumber Company; that the equitable title vested in the state; that the university received title for the purpose of undertaking certain educational work, either as an independent educational institution, or as the agent of the state; that the state in contemplation of law is the owner of the real estate involved; that when the state, through its agent, the university, contracted with the Brooklyn Cooperage Company for cutting and removing timber, it violated the section of the Constitution above quoted, as the owner of after-acquired property in the Forest Preserve as therein set forth; that

this contention is supported by the act of 1893 (Chap. 332) creating the Forest Preserve and Adirondack Park (§§ 100 and 120).

It is unnecessary to examine the question as to what extent the premises involved are a part of the forest preserve. The act of 1898 (Chap. 122, § 8) makes the premises a part of the forest·preserve for certain purposes. We are, however, of opinion that as the state has never been vested with the legal title to the premises in question, the constitutional provision relied upon has no application.

The following is the second ground upon which the constitutionality of the act is attacked : It is argued that if the title to the premises is vested in Cornell University as an independent educational institution it would be an unconstitutional act, as it seeks to enable the state to do by that means what it cannot itself do and what the Constitution forbids it doing. The section of the Constitution said to be violated is article VIII, section 9, reading as follows :· "Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking. This section, shall not, however, prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper. Nor shall it apply to any fund or property now held, or which may hereafter be held, by the State for educational purposes."

The counsel for the state also argues that the act is not sustainable upon the theory of a grant to Cornell University as a subordinate governmental agency. The learned counsel for defendant Cooperage Company contends that the state is dealing with Cornell University, not as an independent educational institution, but as a subordinate govermental agency ; his argument is that the legislature has the power, through any agency it sees fit to select, other than one which is sectarian, to promote scientific or industrial experiments, or any cause of ·education, citing article IX, section 4, of the Constitution, which reads : " Neither the State nor any subdivision

thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."

It is argued there would be no meaning in this prohibition of sectarian appropriation for educational purposes if there were no power to make such appropriations in aid or mainte-. nance of educational institutions which are not sectarian, when a consideration for such appropriations exists in work done by the institutions under contract obligations assumed to the state.

It is not contended that the Constitution contains any such general prohibition.   We have here a public statute whose sole object is to promote education in the art of forestry ; an object in which every citizen of the state has a vital interest, as the heavily wooded regions not only protect the sources of the rivers and lesser streams, but upon them primarily rests the industry of lumbering that is one of vast importance to a country whose forests are rapidly disappearing.   The statute provides a perfect scheme of state control, constitutes the university its agent, requires frequent reports, and as amended in 1900 (Chap. 301) confers upon the comptroller additional powers of financial supervision.   The power sought to be exercised by the state in the present instance is supported not only by judicial authority, but by many instances where its exercise has existed for years and remains unchallenged.

In *Trustees of Exempt Firemen's Benevolent Fund* v. *Roome* (93 N. Y. 313, 327), Judge Finch uses this language : " When the state takes from the public treasury a sum of money and gives it to a corporate body for the relief of deserving beneficiaries it does one of two things.   It either bestows a charity, or recognizes and discharges an obligation due from it to the recipients.   The former it cannot do except in specified cases.   The latter it may always do, for the constitutional provision was not intended and should not be con-

strued to make impossible the performance of an honorable obligation, founded upon public service, invited by the state, adopted as its agency for doing its work   *   *   *."

There could be no clearer statement of the general rule applicable to the case before us.

In *Fox* v. *Mohawk & Hudson River Humane Society* (165 N. Y. 517, at p. 523) under a very different state of facts, CULLEN, J., said : " The appropriation of public moneys for other than strictly governmental purposes and its expenditure through any other than official channels have been most carefully limited by article VIII of the Constitution." The learned judge then quotes section 9, already referred to in this opinion. At page 525 the opinion states : " Of course the state or any of its subdivisions may employ individuals or corporations to do work or render services for it." This case is reported below in 25 App. Div. 26. The late Judge LANDON wrote at page 32 as follows : " The government in the discharge of its duties must be the employer of various kinds of services or labor, from that of the common laborer to that of the expert in art and sciences ; but the employment of such persons is, with possibly rare exceptions, committed by law to some officer or department. Within the restrictions imposed by the Constitution the state may dispense charity through the medium of the private charitable corporations selected by it. Such corporations or persons thus employed may, perhaps without impropriety, be designated as ' subordinate governmental agencies.' " (See, also, *People ex rel. Bd. of Charities* v. *New York Society for the Prevention of Cruelty to Children,* 161 N. Y. 233, 239.)

The counsel for the defendant company has collected from the statute books a number of instances to show how uniformly it has been assumed that the Constitution permitted the acceptance of public moneys or public property by private corporations for educational or like purposes under contracts with the state to render certain services.

American Museum of Natural History ; incorporated by Laws 1869, chap. 119 ; since that time the state has appro-

priated $3,250,000, which is in addition to amounts received from the city of New York. Lecture courses under the control of the museum were established by Laws of 1886, chapter 428, with an appropriation of $18,000.

Metropolitan Museum of Art; incorporated by Laws 1870, chap. 197; appropriations by the state, including the year 1905, amounted to $3,925,000.

New York Public Library, Astor, Lenox and Tilden Foundations; incorporated by Laws 1897, chap. 556. One of the most striking recent instances of a grant of public property to a private corporation in consideration of its performance of educational work is to be found in the legislation with respect to this corporation.

Appropriations to encourage agriculture; Laws 1894, chap. 398, amounted to $30,000.

Farmers' Institute under auspices of New York State Agricultural Society; appropriating $15,000; Laws 1894, chap. 358, p. 728.

New York Zöological Society; Laws 1902, chap. 441. This was a contract between the city of New York and the society, conceding to the latter the control of the New York aquarium at Battery park for its collection and creating an appropriation of public moneys " for furnishing opportunities for study, research and publications in connection with said collections."

Cornell University; numerous appropriations from the year 1890 to and including the year 1906, aggregating over a million dollars. Some of these appropriations were for a meteorological bureau, scholarships, agricultural experiments, veterinary college, the College of Forestry involved in this litigation and other purposes.

It is the policy of the state to foster non-sectarian education in various directions by selecting some corporation to act as its subordinate governmental agency, undertaking to render services to the state in consideration of appropriations made.

It follows that the act of 1898 (Chap. 122) is a valid exercise of legislative power, violating no provision of the Constitution.

The judgment of the Appellate Division affirming the

interlocutory judgment herein should be affirmed, with costs, with leave to the defendant, the Brooklyn Cooperage Company, to plead over on payment of costs in the courts below and in this court within twenty days after the service of a copy of the judgment of this court.

GRAY, O'BRIEN, WERNER and CHASE, JJ., concur; CULLEN, Ch. J., dissents from the result, but concurs in the conclusion of EDWARD T. BARTLETT, J., as to the constitutionality of the statute; HISCOCK, J., not sitting.

Judgment accordingly.