(114 App. Div. 723) ,

PEOPLE v. BROOKLYN COOPERAGE CO. et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. STATES—POWER TO INCUR INDEBTEDNESS—CONSTITUTIONAL PROVISIONS—AID TO UNIVERSITY.

Laws 1898, p. 230, c. 122, authorizing Cornell University to establish a college of forestry, empowering it to acquire at the expense of the state forest lands for the purpose of conducting experiments in forestry, and containing an appropriation to carry out the provisions of the act, is constitutional; the appropriation being assumed not to be in aid of the university, within Const. art. 7, § 1, and article 8, § 9, declaring that the credit of the state shall not be loaned to any individual, association, or corporation.

2. COLLEGES AND UNIVERSITIES—EDUCATION IN FORESTRY—STATUTES.

Under Laws 1898, p. 230, c. 122, authorizing Cornell University to create a college of forestry and empowering it to purchase at the expense of the state forest lands for the purpose of conducting experiments in forestry, etc., the university is a trustee of the lands acquired by it, and it cannot be deemed the absolute owner thereof, so as to permit it to use or dispose of the same as it may choose.

3. SAME.

While, under Laws 1898, p. 230, c. 122, authorizing Cornell University to establish a college of forestry, and to acquire at the expense of the state forest lands on which experiments in forestry shall be conducted as it

may deem most advantageous, etc., the manner of doing the work in instruction in scientific forestry is left to the discretion of the university; yet the university is not permitted to do what it sees fit in the way of denuding the forest lands acquired under the act, and cut or permit to be cut timber thereon in such quantities as to destroy the forests, without regard to the interests of the state, or the duty which the university, on accepting the provisions of the statute, has undertaken to perform.

4. SAME.

Laws 1898, p. 230, c. 122, authorizes Cornell University to establish a college of forestry, and to acquire at the expense of the state forest lands on which experiments in forestry as it may deem advantageous to the state shall be conducted. The university accepted the provisions of the act, and thereafter conveyances of forest lands were made to it by deeds providing that the lands were for the purposes mentioned in the statute, and that the lands should at the expiration of 30 years become a part of the forest preserve. The university thereafter entered into a contract with a third person, whereby he was authorized to cut and remove substantially all the merchantable timber on the lands thus conveyed. The third person had knowledge of the obligations assumed by the university. *Held*, that the third person acquired no greater interest in the lands than the university had, and neither the university nor the third person had the right to devastate the lands without any attempt to carry on the work of scientific forestry.

5. SAME.

Laws 1898, p. 230, c. 122, authorizes Cornell University to establish a college of forestry and to acquire at the expense of the state forest lands on which experiments in forestry shall be conducted, and provides that at the expiration of 30 years forest lands acquired by the university shall be conveyed to the state. The university accepted the provision of the act, and acquired forest lands paid for by the state. It then entered into a contract with a third person, authorizing him to cut and remove the merchantable timber on the land without any attempt to carry on the work of scientific forestry. *Held*, that the state, whether its rights were legal or equitable, was entitled to the aid of the court in the enforcement of the statute with respect to the lands acquired thereunder.

Appeal from Special Term, Albany County.

Action by the people against the Brooklyn Cooperage Company and another. From an interlocutory judgment overruling a demurrer to the complaint, defendant the Brooklyn Cooperage Company appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Edward M. Shepard, for appellant.

Julius M. Mayer, Atty. Gen., and Edward B. Whitney, for the People.

KRUSE, J. The question involved is the right of the state in, and its dominion over, the so-called "College Forest," consisting of about 30,000 acres of land in the Adirondack region, which were conveyed by the Santa Clara Lumber Company to Cornell University on December 21, 1898, the consideration of $165,000 being paid wholly by the state. The deed was made out and the consideration paid pursuant to the provisions of chapter 122, p. 230, of the Laws of 1898, entitled "An act to promote education in forestry, to encourage and provide for the establishment of a college of forestry at Cornell University, and making an appropriation therefor," which became a law on the

26th day of March, 1898. That act authorized the trustees of Cornell University to establish a department in the university to be known as the "New York State College of Forestry," for the purpose of education and instruction in the principles and practices of scientific forestry, upon acceptance by the university of the provisions of the act. For the purpose of carrying out the object of the act, it authorized the board of trustees of the university, with the consent and approval and under the direction of the forest preserve board of this state, to purchase and acquire not more than 30,000 acres of land in the Adirondack forest. It was provided that the university should have the general possession, management, and control of the land, and, through its trustees and College of Forestry, conduct upon said land such experiments in forestry as it may deem most advantageous to the interests of the state and the advancement of the science of forestry, and plant, raise, cut, and sell timber at such times, of such species and quantities and in such manner as it may deem best, with a view to obtaining and imparting knowledge concerning the scientific management and use of forests, their regulation and administration, the protection, harvesting, and reproduction of wood crops, and earning a revenue therefrom; and to that end to appoint a faculty for the school, and a forest manager, rangers, and superintendents, and incur such other expense in connection therewith as might be necessary for the proper management of the college and the care of the lands for the purposes of the act and within the amount appropriated.

Section 4 of the act reads as follows:

"Every deed or conveyance of lands acquired under the provisions of this act by said university shall contain in the habendum clause thereof a condition and covenant that the same, and the title to the land conveyed therein and thereby, is taken by the grantee therein named, the Cornell University, under and pursuant to the provisions of this act; and shall also contain an express covenant running with the land and binding upon said university, that the same is conveyed for the uses and purposes in this act provided for, and also an express covenant on the part of said university to convey said lands to the people of the state as hereinafter provided for. Every such conveyance shall be executed in duplicate, one of which shall be recorded in the office of the clerk of the county where the land is situated, and the other in the office of the Secretary of State."

The act further required Cornell University to keep all moneys from state appropriations for the college in a separate fund, and required a report of the expenditures and of the general operations of the college to be made to the Legislature, and that all sums received by the university from the sale of timber or otherwise under the act be immediately paid to the State Treasurer, and credited to the fund appropriated from time to time for the purposes of the act.

Section 8 provided:

"Subject only to the powers, duties and responsibilities vested in or imposed upon the trustees of Cornell University by this act, and except as may be inconsistent with this act and the objects and purposes herein provided for, the land so purchased shall be deemed to be and shall be regarded as a part of the forest preserve, so far as may be necessary for the protection of fish, game and forests as prescribed by the fish, game and forest law and the jurisdiction, supervision, powers, duties and responsibilities of the fish, game and forest commission, and of the fish and game protectors and foresters,

authorized by the fish, game and forest law, except as may be inconsistent with the provisions of this act, shall extend and apply to the land so purchased hereunder for the purposes of this act."

Section 9 of the act provides for the conveyance of the lands after the expiration of 30 years from the time the act took effect, which was on the 26th day of March, 1898. It reads as follows:

"Upon and at the expiration of thirty years from and after the taking effect of this act, all lands and each and every part and parcel thereof, purchased by said university, and paid for by the state under and pursuant to the provisions of this act, shall be by the board of trustees of said university, or its sucessors, granted and conveyed to the people of the state of New York by a good and 'sufficient deed of conveyance, without further price or consideration therefor, and the same shall thereupon be and become a part of the forest preserve. Nothing herein contained, however, shall be held or construed to render it obligatory upon the trustees to accept the provisions hereof."

The act appropriated the sum of $10,000, and was passed with a three-fifths quorum being present. On the 1st day of April, 1898, the board of trustees of Cornell University by a formal resolution accepted the provisions of the act, and the deed of conveyance was thereafter, and on the 21st day of December, 1898, made to it by the Santa Clara Lumber Company, at which time most of these lands were covered with a forest. Soon after this conveyance the university took possession of the lands, and on or about May 5, 1900, entered into a contract in writing with the defendant, the Brooklyn Cooperage Company, whereby the cooperage company was required to erect and maintain on the college forest two or more factories, at least, one for the manufacture of staves and heading, and at least another for the manufacture of the products of wood distillation, permitting the company to maintain the necessary buildings and structures, to use any water power upon the college forest for the purpose of its plants, with a right to construct and maintain dams; holding the university harmless, however, from any damage resulting from any construction or maintenance or use of the water power, and providing, further, that this should not imply any warranty on the part of the university. Also permitting the cooperage company to produce and use electricity or other agents for fire, heating, lighting, or telephone service for the use of its plant, or other uses of the college forest or the adjoining tracts; "provided, however, that no such use shall be permitted which shall be inconsistent with the purposes for which the college forest has been acquired by the university." The university further assumed by said contract to give to the cooperage company the right, subject to the terms and conditions of the agreement, "to take and use all the maple, beech, and birch wood and timber of merchantable trees now upon the college forest, and also such spruce and other soft woods as under proper forestry management it shall become proper to cut; but the university may in its discretion reserve all or any of the timber standing alongside of rivers, streams, ponds, highways, or fire lines to the width of not to exceed twenty-five rods, and altogether not compromising more than 1,500 acres of the whole college forest. The university shall also have the right to accept and dispose of and sell separately such firewood and stovewood as is required for local use, not to exceed 1,500 cords

in any one year. No trees below ten inches at the stump shall be considered as merchantable. But the university may in its discretion, as proper forest management requires, cut trees of smaller size, and deliver the wood in cordwood, nor shall the university be prevented from leaving such trees of larger diameter as proper forest management shall require; nor shall it be prevented from disposing to other parties of any wood materials which are not required or customarily used in the manufacture of staves, headings, or wood distillation, or from cutting and using such wood materials as are required for the use of the New York College of Forestry." The company agreed to take, and the university agreed to cut and deliver at its own expense, in each and every year of the term of 15 years, the quantity of wood in logs and cordwood as the cooperage company shall require cut during the next following season, giving notice as therein stated:

"Provided that the university shall not be obliged to cut in any one year more than $1/_{15}$ of the wood standing on the college forest. Nor shall it be required in any one year, except as hereinafter provided, to cut less than 10,000 cords of fuel wood and retort wood, together with the logs produced in the cutting of such cordwood. At no time shall the university be obliged to cut and deliver a larger amount of logs than can be secured from the trees necessary to be cut in order to supply the quantities of cordwood required or taken by the cooperage company."

—To be paid for by the cooperage company at certain prices named in the contract. The contract provided for reducing the amount of wood to be taken in the event that there was a depression in business, making it unprofitable to carry on the business, and also permitting the cooperage company to terminate the contract as regards the wood to be used for wood distillation in the event of the reduction of the tax on grain alcohol, so as to make it unprofitable to manufacture wood alcohol, and also providing for suspending production for a period of four months resulting from strikes and unavoidable contingencies. The contract further provided as follows:

"Nothing in this agreement shall be construed as limiting the university in the management of its property in any way, except so far as herein stated, and all reasonable rules and regulations for the safety of the property, and especially with regard to danger from fires, promulgated by the university or by the forest, fish, and game commission, must be observed by the company; and the company especially agrees that no deleterious substance resulting in its operations shall be allowed to run into rivers or water courses or lakes."

The complaint further alleges that the cooperage company thereafter constructed one or more factories on or near said lands, built a railroad through the land, and the university commenced to cut and deliver wood and timber to the cooperage company, clearing a portion of the land, and replanting only a small part of the land so cleared, leaving the rest denuded, intending and expecting from year to year as the old timber should be removed, and for the purpose of forestry education and experiment, to replant the tract thus cleared in successive sections with seedlings; but that the expense of cutting and delivering to the cooperage company was so great that no profit was derived therefrom by the university, and no funds were provided, by the university or otherwise, for planting or raising of trees, or conducting experiments in forestry, or maintaining the New York State Col-

lege of Forestry, except certain appropriations made by the state, which appropriations ceased in 1902. That in the month of June, 1903, the university discontinued and abandoned the maintenance of said college, and since that date has planted nothing, and made no attempt to conduct experiments of any kind upon the land aforesaid, but still remains in possession thereof. That the university under said contract has been required by the cooperage company to cut timber and deliver it to the cooperage company, and the university and the cooperage company threaten to cut and remove large quantities of timber, claiming the right to do so, notwithstanding the failure of the university to carry out the object contemplated by the act of 1898, the provisions of which were accepted by the university, and to use the lands and premises for the purpose for which they were acquired. It is further alleged in the complaint that the effect of the actions and omissions, if permitted, will be to denude these lands of their present forests, or, if not entirely denuded, occupied by growth of vegetation of comparatively little value, and do irreparable injury to the plaintiffs, for which damages would not be adequate compensation, and that the recovery of damages would also involve a multiplicity of suits, and claiming that the lands in reality belong to the state. The complaint asks for an adjudication upon the validity of the contract, and for a permanent injunction enjoining and restraining cutting of timber upon the lands, adjudging the plaintiff to be the equitable owner and entitled to the possession, and such further relief as may be just. The defendant cooperage company demurs to the complaint, upon the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer having been overruled, the cooperage company appeals from the judgment entered upon that decision.

The conveyance not only recited the payment of the consideration by the state, but referred to the act of the Legislature under the provisions of which the university had assumed the burden of this undertaking, and the object of acquiring these lands and the uses to be made of them was apparent therefrom. It was evidently intended that the work of cutting the timber and reforesting the lands should be done by the students, or under their direction, subject to the general supervision and control of such of the faculty of the university as had the charge of the work. Thirty years seems to have been the the limit set for carrying out to completion what was to be done on these lands, for at the expiration of that period they were to be conveyed to the state by the university. The act and the deed given under its provisions so provided. The deed of conveyance was made in December, 1898, as has been stated, and thereafter, and in May, 1901, the defendant entered into a contract with the Brooklyn Cooperage Company, its codefendant, which provides for cutting and removing substantially all the merchantable timber on these lands. The inference is permissible that the cooperage company knew of, or at least had constructive notice of, the purpose and object of acquiring these lands, and the duty and obligation assumed by the university, as well as the use to be made of them; for the act is specific in its terms, and the deed given pursuant thereto was recorded as the law provides, and this is also apparent from the terms of the contract. The university has

abandoned its school of forestry in connection with these lands, and has failed to carry out the very purpose for which they were acquired, but the cooperage company insists upon the timber being cut, and threatens to continue the work of removing the merchantable timber, which, if permitted, will be to denude the lands of their present forest, and do irreparable injury thereto, leaving them practically a barren waste.

The cooperage company admits these facts by its demurrer, but contends that the state is without redress, and entitled to no relief against it. We do not regard the situation of the state so hopeless. We think the state has such an interest in these lands as permits and requires it to intervene, and prevent the cutting of timber for purposes other than such as was contemplated by the act and the conveyance made thereunder to the university. We assume that the Legislature had the right to appropriate the moneys for acquiring these lands, and that the statute pursuant to which the lands were acquired and the school of forestry and the work of experiment in scientific forestry was organized is constitutional; but in so doing we must necessarily assume that the appropriation was not made in aid of the university, or any other private institution whatever, within the prohibition of the state Constitution (article 7, § 1; article 8, § 9), but rather for public educational purposes, which is a governmental function, and to that end Cornell University was chosen, and the responsibility accepted by it of carrying out, within certain limits, the particular educational work to be carried forward. It will be observed that the state did not appropriate these moneys and direct their payment to Cornell University. Their use was directed for a certain specific purpose. While the deed of conveyance was nominally taken in the name of the university, the statute under which it was done, supplemented by the deed itself, made it perfectly plain that the university was not to be regarded the absolute owner of the property, permitting it to use or dispose of it as it should choose. The duty which it assumed and the relations which it sustained toward these lands was rather that of a trustee. The paramount object was to teach the science of forestry, not to cut the timber. If the cooperage company is right in its contention, it would seem to follow that the university might have sold the lands immediately after requiring them, or dispose of the timber without establishing a school, or even commencing the work which it had undertaken to do. That leads us directly to a consideration of this contract, entered into by the university with the cooperage company in May, 1901.

The situation as regards the contract may be considered in two aspects: (1) As it was when the contract was made; (2) as it is now, or as it was when the work assumed by the university was abandoned. We are inclined to the opinion that the contract itself shows, if carried out, such a wide departure from the purpose for which the lands are held by the university and the use to be made thereof that it is of no binding force and effect, at least as regards the state, unless the terms and conditions thereof and the license and rights assumed to be given to the cooperage company by the university are to be treated and regarded as being subject and subordinate to the right of the state to require the object and purposes for which the lands were acquired

to be carried out, and so limited and restricted as not to prevent or interfere with such paramount right of the state. While it is true that the manner of doing the work of instruction in scientific forestry, involving the cutting of timber, as well as replanting and growing it, was left in terms to the discretion and judgment of the university, yet this did not permit the university to do what it saw fit in the way of denuding these forest lands, and cut or permit to be cut timber in such quantities and in such manner as to destroy the forest, without regard to the interests of the state, or the duty which the university had undertaken to perform. The university was required to exercise reasonable discretion and reasonable foresight and prudence, and it may well be questioned whether in making this contract it so acted.

But, be that as it may, we think the cooperage company acquired no greater interest in these lands and has no more right to cut the timber than the university itself would have. The contract was made with full knowledge of the obligation assumed by the university, and we are clearly of the opinion that neither the university nor the cooperage company have the right to devastate these lands, taking from them their greatest value, without any attempt to carry on the work of scientific forestry. Not only does it appear that what is now proposed to be done in cutting the timber and removing it was not contemplated by the act and the deed of conveyance, but the deed, following the provisions of the contract, expressly provides that the land is conveyed for the uses and purposes mentioned in the act, and at the expiration of 30 years from the taking effect of the act the land shall be conveyed by the university to the state without further price or consideration, and thereupon become a part of the forest preserve.

We deem it unnecessary to determine the precise right and title of the university in these lands. It is not a party to this appeal and has not been heard. Nor do we deem it necessary to point out the precise class of property rights to which the interests of the state belong. That it was ultimately to have the absolute and legal title to these lands there can be no doubt, for the deed itself so provides, and under that provision alone it would seem to have the right to prevent waste and devastation upon these lands. Whether the right of the state is to be classified as a legal right or as an equitable interest in these lands, in either view it is substantial, as we think, and is entitled to enforcement by the courts. Why the statute provided for taking the deed in the name of the university must remain a matter of conjecture. If it was to prevent the application of the constitutional provision which forbids the selling, removal, or destruction of timber on lands owned by the state in the forest preserve (State Const. art. 7, § 7), which seems not improbable, it is by no means certain that that has been accomplished. From the provisions of this act and the deed, and the payment of the purchase money by the state, which the Constitution forbids if in aid of any association, corporation, or private undertaking, it may well be argued that, although the legal title to these lands was taken in the name of the university, the state in fact became the owner thereof. If the state is an owner within the meaning of this provision of the Constitution, then it would seem that the cutting of timber on

these lands is forbidden even for promoting the science of industrial forestry or any other educational purpose (People v. Adirondack R. R. Co., 160 N. Y. 225, 54 N. E. 689), but that question we leave undecided. That and other questions may properly be left when the university itself may be heard. We deem it proper to go only so far as may be necessary to determine the immediate question presented by the demurrer of the defendant, the Brooklyn Cooperage Company to the complaint, and as to that we think the demurrer was properly overruled.

The interlocutory judgment should be affirmed, with costs, with leave to the defendant the Brooklyn Cooperage Company to plead over on the usual terms. All concur.

---

(114 App. Div. 634)

### MONROE v. MATHER–LOVELACE et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. EXECUTORS AND ADMINISTRATORS—SETTLEMENT BETWEEN HEIRS—ACTION FOR ACCOUNTING.

Where a settlement of the estate of a decedent was fairly made without fraud or overreaching, and was acceptable to all his next of kin, an action by an heir for an accounting is barred thereby.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2293, 2294.]

2. SAME—LIMITATION OF ACTIONS.

Where one died in 1880, and a settlement was made between his heirs, and in 1889 a decree was entered judicially settling the accounts of the administrators, an action by an heir for an accounting of the estate commenced in 1901, after the death of some of the heirs, was barred by limitations.

3. SAME—RELEASE AND SATISFACTION BY HEIRS.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2293, 2294.]

4. JUDGMENT—PERSONS CONCLUDED.

In an action by legatees against an executor to have certain annuities declared a lien on the real estate of the decedent, other legatees, who were made defendants and failed to answer, were barred by a judgment dismissing the complaint on the merits.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1181]

Appeal from Special Term. Oneida County.

Action by Lucinda M. Monroe against Ida Mather-Lovelace and others. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Edwin H. Risley, for appellant.

S. H. Lindsley, for respondents Charles W. Mather's Adm'rs.

G. C. Morehouse, for respondent A. D. Mather & Co.'s Bank.