PEOPLE v. BROOKLYN COOPERAGE CO. et al.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

1. WOODS AND FORESTS (§ 8*)—EXPERIMENTS—POWER IN FORESTRY.
    Laws 1898, c. 122, authorizing Cornell University to acquire at the expense of the state forest lands on which experiments in forestry shall be conducted, and providing that at the expiration of a specified period the lands shall be conveyed to the state, makes the university an agent for the accomplishment of a state purpose, subject to restrictions imposed by the statute giving the university full discretion as to the expenditures, by contract or otherwise, of moneys appropriated by the state, and as to the sale of timber from the lands.
    [Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

2. WOODS AND FORESTS (§ 8*)—FORESTRY—CONTRACTS.
    Cornell University, acquiring land under Laws 1898, c. 122, for experiments in forestry with discretion to raise, cut, and sell timber as it might deem best, contracted with a private corporation whereby the university was required to cut and deliver at its own expense, for 15 years, such timber as the company might require, not exceeding a specified quantity. The contract was prepared by the dean of the College of Forestry in the university, who was an expert. There was considerable evidence whether the most scientific forestry was the selective system or the clear cutting system involving the stripping of the land. The contract did not prevent the adoption of any system found most in accord with scientific forestry. *Held*, that the corporation, to maintain its rights under the contract, was not required to establish that the contract was in accord with the most scientific forestry; but it might assume that such question would be determined by the university.
    [Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

3. WOODS AND FORESTS (§ 8*)—APPROPRIATIONS—RIGHTS OF STATE.
    Under Laws 1898, c. 122, authorizing Cornell University to acquire, at the expense of the state, lands on which experiments in forestry may be conducted, within the amount appropriated, the state as between it and the university may abandon the experiment and refuse to make further appropriations therefor, especially since one Legislature may not bind future Legislatures to make further appropriations.
    [Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WOODS AND FORESTS (§ 8*)—FORESTRY CONTRACTS.

A corporation contracting with Cornell University as to timber lands acquired under Laws 1898, c. 122, authorizing the university to acquire at the expense of the state forest lands for experiments in forestry, may not, as against the state, enforce the contract beyond the stipulations therein, within the known authority of the university to contract, and the corporation may not complain of the refusal of the state to make appropriations to carry on the experiments contemplated by the act so as to enable the carrying out of the contract as contemplated; the corporation having knowledge of the limited authority of the university as agent of the state in the transaction.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

5. STATES (§ 102*)—CONTRACTS BY AGENT—RATIFICATION.

The Legislature making appropriations for the College of Forestry of Cornell University after knowledge of the terms of a contract between the university, acquiring forest lards for experiments in forestry as authorized by Laws 1898, c. 122, and a private corporation, does not thereby ratify the terms of the contract executed in excess of the authority conferred on the university, though the state may ratify an unauthorized contract made in its behalf and be bound thereby.

[Ed. Note.—For other cases, see States, Dec. Dig. § 102.*]

Kellogg, J., dissenting.

Appeal from Special Term, Albany County.

Action by the People against the Brooklyn Cooperage Company and another. From a judgment for plaintiff, defendant named appeals. Affirmed.

See, also, 187 N. Y. 142, 79 N. E. 866.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and · BETTS, JJ.

Herrick & Herrick (D. Cady Herrick, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (John G. Agar and James F. Tracey, of counsel), for the People.

SMITH, P. J. The defendant the Brooklyn Cooperage Company appeals from a judgment at Special Term, which has determined that the people of the state were the equitable owners of certain Adirondack land, and has enjoined both defendants from cutting wood or timber upon said land or removing any wood or timber therefrom, and has required Cornell University to convey said land to the state. The land in question was conveyed by the Santa Clara Lumber Company to Cornell University, pursuant to chapter 122 of the Laws of 1898. To comprehend fully the issues involved in this action, it is necessary to understand the exact purport of that act. In the first section it is provided that, upon the acceptance by Cornell University of the provisions of the act, the trustees of that university were authorized and empowered to create and establish a department in said university to be known and called the "New York State College of Forestry," for the purpose of education and instruction in the principles and practices of scientific forestry. By the second section the university was authorized to purchase not more than 30,000 acres of land in the Adirondack forests. The section then reads:

"The university shall have the title, possession, management and control of, such land and by its board of trustees through the aforesaid College of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Forestry shall conduct upon said land such experiments in forestry as it may deem most advantageous to the interests of the state and the advancement of the science of forestry, *and may plant, raise, cut and sell timber at such times, of such species and quantities and in such manner as it may deem best,* with a view to obtaining and imparting knowledge concerning the scientific management and use of forests, their regulation and administration, the production, harvesting and reproduction of wood crops and earning, a revenue therefrom, and to that end may constitute and appoint a faculty of such school, consisting of one director or professor, and two instructors, and may employ such forest manager, rangers and superintendents, and incur such other expenses in connection therewith as may be necessary for the proper management and conduct of said college and the care of said lands and for the purposes of this act, *within the amount hereinafter appropriated.*"

By section 4 of the act, it was provided that the deed to be given should contain an express covenant running with the land and binding upon said university; that the same was conveyed for the uses and purposes in the act provided for, and also an express covenant on the part of said university to convey said lands to the people of the state as thereinafter provided for; that said lands should be paid for by the state. By section 6 it was provided as follows:

"All moneys received by Cornell University from state appropriations for the said college shall be kept by said university in a separate fund from the moneys of the university, and shall be used exclusively for said college. * * * "

By section 7 it was provided that all sums received by the university from the sale of timber or otherwise under the act should be immediately paid to the State Treasurer, and credited to the fund appropriated from time to time for the purposes of the act. By section 9 it was provided that at the expiration of 30 years the university should transfer the said lands to the state, and thereupon said lands should become part of the forest reserve. By section 10 of the act the sum of $10,000 was appropriated for the purposes of the act, exclusive of the purchase of land to be paid to Cornell University.

[1] The purpose of this act is clearly expressed and unmistakable. The land was to be purchased by the state. The expenses were to be met by the state by appropriation and by the proceeds of the sales of timber from said land. Cornell University acted merely as the instrument for the accomplishment of this state purpose. It was authorized to. act as the agent of the state. Upon demurrer to the complaint the Court of Appeals has held, in 187 N. Y. 142, 79 N. E. 866, that Cornell was acting under a *restricted agency.* Within the restrictions, however, imposed by the statute, this agent was given full discretion as to the expenditure by contract or otherwise of moneys appropriated, and as to the sale of timber from the land, both as to terms and to quantities. [2] Clothed with this power, Cornell University entered into the contract with the defendant Cooperage Company, which is here the subject of review. It was therein first recited:

"Whereas, the university has the right during the period of thirty years from the 21st day of December, 1898, and desires to cut, remove and dispose of such wood and timber located upon thirty thousand acres of land in Franklin county, New York (hereinafter called the College Forest), as the university deems desirable under proper forestry system, and also has the

right during such period to lease the same or any part thereof for such purposes, and upon such terms as to the university shall seem best; and

"Whereas, the company with a view to utilizing such wood and timber in order to enable the university to dispose of the same, proposes to place upon the College Forest two or more plants for the manufacture of staves and headings and the products of wood distillation."

Thereupon the defendant Cooperage Company agreed to erect and maintain upon said College Forest two or more factories, at least one for the manufacture of staves and headings, and at least one for the manufacture of the products of wood distillation. The company agreed to operate such plants for the period of the agreement, or as long as wood supplies were to be found on the College Forest, except as hereinafter provided. The company was given the right, subject to the conditions and exemptions thereinafter contained, to take and use all of the maple, beech and birch, wood and timber of merchantable trees then upon the College Forest, and also such spruce and other soft woods as under proper forestry management it should become proper to cut. But the university was given a discretion to reserve all and any of the timber standing alongside of rivers, streams, ponds, highways, or fire lines, to the width of not to exceed 25 rods, and altogether not comprising more than 1,500 acres in the whole College Forest. The contract then provided:

"But the university may in its discretion as proper forest management requires, cut trees of smaller size (within ten inches) and deliver the wood in cord wood. *Nor shall the university be prevented from leaving such trees of larger timber, as proper forest management shall require.*"

The third provision, which has been the subject of discussion in the opinions written upon the demurrer, reads as follows:

"Third. The company agrees to take and the university agrees to cut and deliver, at its own expense, in each and every year of the term of the fifteen years of this agreement, such quantities of wood, in logs and cord wood, as the company may give written notice that it shall require to be cut during the next following season. Such notice to be given not later than the first day of July in each year, provided that the university shall not be obliged to cut in any one year more than one-fifteenth of the wood standing on the College Forest. Nor shall it be required in any one year, except as hereinafter provided, to cut less than ten thousand cords of fuel wood and retort wood, together with the logs produced in the cutting of such cord wood. At no time shall the university be obliged to cut and deliver a larger amount of logs than can be secured from the trees necessary to be cut in order to supply the quantities of cord wood required or taken by the Cooperage Company. The first installment of cord wood shall not be required to be cut before the fall season of the year 1900; and all logs shall be cut out and delivered during the felling season in which they shall be cut; but cord wood may be cut and delivered throughout the year."

The contract specified the prices which the defendant the Cooperage Company should pay for such timber as it received under the contract, and further provides for certain details immaterial to this discussion.

But the cutting of the timber, it will be noticed, was all to be done by the College of Forestry itself. In order to execute this part of the contract, funds were necessary to the university, and to that end application was made to the Legislature for the appropriation of $50,000. Upon this application the Legislature appropriated $30,000, "for the improvement, maintenance and administration of the State

College Forest"; and for the next year appropriated another $30,000 for "improving, maintaining and administering the experimental forest in the county of Franklin by the State College of Forestry." In the first year the sum of $12,000 was also appropriated for the College of Forestry, and thereafter the sum of $10,000 was annually appropriated "for the College of Forestry," until 1903. The contract with the Cooperage Company was not executed until the first appropriation of $30,000 was made. Thereupon the contract was executed, and the parties entered upon the performance thereof. In 1903 the state refused to make an appropriation for the College of Forestry, and thereupon the College of Forestry was abandoned. In that year, however, $5,000 was appropriated for the clearing up of land and the planting of new trees. This was expended under the direction of the trustees of Cornell University. Since that time no other appropriation has been made; no further timber has been cut, although the defendant Cooperage Company has demanded that the contract be performed, and insists upon its right in this action to the payment of the damages which it has suffered, and the prospective profits which it has lost, as a condition to the equitable relief which the plaintiff asks. Upon the demurrer, both in the Special Term and in the Appellate Division, the contract was condemned as being antagonistic to the purposes of the act under which Cornell University was authorized to make the contract. In the Court of Appeals the learned judge writing the opinion spoke of section 3 of the contract as conferring upon the defendant company "powers hostile to the general scheme of the act of 1898." It was distinctly stated, however, in the decision of the Court of Appeals, that the contract must be judged by the circumstances under which it was made, and condemnation of the contract was withheld until those circumstances should appear upon the trial of the action. Upon the trial of the action it appeared that in order to reforest this land it was necessary to strip it of this hard wood; that hard wood cannot be floated down a stream of water; that the cost of railroad transportation was prohibitive; that it was necessary to bring some consumptive plant to the forest itself. It was shown that upwards of $350,000 was expended in establishing the two plants that the defendants contracted to establish, in order to dispose of the timber which the university should deliver under the contract. The evidence justifies the conclusion that such an expenditure was necessary, and that no contract could be made under which such an expenditure should become necessary, unless such contract included substantially the merchantable timber upon the said land. From 15,000 acres of the 30,000 purchased, a large part of the timber had already been removed. From that part it was necessary to remove still further timber, in order to conduct the experiment of reforestation. And upon the balance it was necessary to remove substantially all of the timber. The record contains much interesting evidence upon the question of the proper method of forestation. The relevancy of this evidence is not apparent to my mind. Cornell University was given discretion to use this land and sell such timber as in its judgment should be proper for the conducting of this experiment.

The university had already secured, as the dean of the College of Forestry, the foremost forestry expert in the land, who himself drew the contract or dictated its terms. There was considerable evidence as to whether the most scientific forestry was the selective system or the clear cutting system. The selective system involved the cutting out of part of the trees only, while the clear cutting system involved the stripping of the land, so that the seeding and replanting might be done upon clear land. For the first two years under this contract the selective system was adopted. Thereafter the clear cutting system was adopted. Nothing in the contract, however, prevented the adoption of either system or of any system which might be found most in accord with scientific forestry. With this power and discretion left in Cornell University under the act of 1898, it is not possible that the defendant Cooperage Company, in order to maintain its rights under this contract, is bound to establish that the contract is in accord with the most scientific forestry. The company might well have assumed that that question had been determined by Cornell University itself. With its determination only was the defendant company concerned. Nor, in view of the circumstances disclosed by the evidence, can I see anything in the provisions of article third which are in antagonism to the spirit of the act. No expert in the case has questioned that the experiment of reforestation involves of necessity the cutting down of any standing forest, either under the selective system or under the clear cutting system. The state purchased 30,000 acres for this experiment. It is immaterial whether or not this experiment could have been carried on with a smaller acreage. Cornell University had the right to assume that the experiment was to be upon a larger scale, and commensurate with the quantity of land given therefor. Inasmuch as all of this land was required to be substantially cleared to accomplish the purposes of the experiment thereupon, the fact that the contract called for the clearing of all of the land was in complete harmony with the purposes of the act, and with the powers given to the university thereunder, both express and implied. It may not be necessary, however, to decide this question, in view of the construction which seems to me must necessarily be placed upon the contract and the limitations which I find therein.

[3] As between the state and Cornell University it cannot be doubted that the state at any time had the right to abandon this experiment, and to refuse to make further appropriations therefor. This assumption may be based either upon the nature of the undertaking or upon the limited appropriation with which the project was started. Moreover, the Legislature could not bind future Legislatures to make further appropriations. With this reserved right the Legislature, by section 2 of the act of 1898, limited the authority of Cornell University to expenditures "within the amount hereinafter appropriated." It was undoubtedly contemplated by both parties, as found by the learned trial judge, that further appropriations would be made from year to year, at least for the 15 years during which this contract was to run.

[4] The contract of the defendant company made with the agent of the state, with full knowledge of its limited authority, is not enforce-

able, at least as against the state, beyond the stipulations therein contained within that known authority. Nor has the defendant company any claim against the state beyond the amount of the appropriations which the Legislature shall make. It is possible that in interpreting the contract account should be taken of any profits which might accrue from the sale of timber upon the land. These were to be devoted to the purposes of the College of Forestry in the same manner as were the appropriations made by the Legislature. Even so, however, the situation is not changed, cause of the fact that the contract was without profit. As against the state, therefore, the defendant company took its chance on the continuation of the appropriations necessary to . enable Cornell University to carry on the experiment. Upon that chance these plants were constructed. Ordinarily a contract made with a known agent in the name of the agent is the agent's contract, not the principal's. In this case, however, the state could not buy the land and authorize the cutting of any timber thereon. The state itself could not have made the contract, so that the making of the contract in the name of Cornell University could hardly be deemed within the contemplation of either party to be intended to create the assumption of liability on the part of the agent. It is probably unnecessary, however, to decide this question, as no issue has been framed between the Brooklyn Cooperage Company and Cornell University. The discussion can only be relevant as bearing upon the interpretation of the rights of the state and the defendant company between themselves. Whether or not the defendant company have recourse against Cornell University, having made a contract upon the implied condition that the state shall appropriate moneys necessary to the carrying out of the contract, it cannot complain if future Legislatures should fail to see any profit in further continuing the experiment.

Upon the argument one of the justices suggested that the right of abandonment of this experiment rested with the Legislature only, and that the Attorney General could not acting in behalf of the state elect to consider the experiment abandoned and insist upon the conveyance by Cornell University of this land to the state. It is unnecessary to consider this question, as the appellant makes no criticism of the judgment upon any such ground.

[5] The defendant company insists, not without force, that the terms of its contract were explicit and were without condition, and that those terms became known to the Legislature through the annual reports of Cornell University, and that with exact knowledge of the nature of the contract further appropriations were made to the College of Forestry, and no disavowment made of the right of Cornell University thus to contract. From these facts it is insisted that the state has ratified this contract. While undoubtedly a state is held to its contracts as is an individual, and is liable for their breach as are individuals, the court will not find a ratification of an unauthorized contract made in its behalf, except upon clear indication that the Legislature so intended. The discussion of the representative of Cornell before the finance committee of the Senate and Assembly can

hardly be deemed a notification to the Legislature as a body of the exact nature of the contract. The terms of the contract were, substantially indicated, however, in later reports of the university to the Governor, which were laid before the Legislature. After such reports became public, the only appropriations that were made were made "for the College of Forestry," while the two appropriations of $30,000 each, which had been theretofore made for the conduct of the experiment, were specifically stated to be for that purpose. It is a conceded fact that the general expenses of the College of Forestry, including the salary of the professor and his instructors, were about $10,000. So that there cannot be found to have been any appropriations for actual work in the cutting of timber upon the forest land. An appropriation of $10,000 by the Legislature, therefore, for the maintenance of the college itself, which did not contemplate an expenditure for work upon the forest land, can hardly be deemed to be a ratification of the contract for the sale of timber, although such contract was at the time known to the Legislature. I cannot find, therefore, any act of the Legislature from which can be gleaned intention to assume the unqualified obligations of the contract between the defendant company and Cornell University.

If I am right in these conclusions, the defendant has no claim against the state of New York which can be made either the subject of a counterclaim, or the payment of which can be made a condition to the granting of such equitable relief as the state may be entitled to. It follows that the judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except KELLOGG, J., who writes for modification.

JOHN M. KELLOGG, J. (dissenting). Cornell University became an instrument for the state to carry on the experiment in forestry which the state undertook for the benefit and education of its people. The method of conducting the forestry operations were committed substantially to the judgment and discretion of the university, which might be controlled from time to time by the appropriations and the terms upon which they were made. Both the state and the university incurred certain obligations to the extent at least that for the time stated the title to the property must remain in the university, and whatever experiments in forestry were to be conducted thereon must be by the university.

The Cooperage Company knew, or is chargeable with knowledge, of the relations existing between the state and the university, and its contract is subject substantially to the terms under which the university holds the lands. The company could get no deliveries under its contract except such as the university might be able to make considering the true relations between it and the state. When we read the contract in the light of the surrounding circumstances and put into it the conditions necessarily implied, it cannot be said that it was unauthorized, or that it is so absolutely opposed to the well-known methods of forestry that it is illegal. The evidence fairly shows that the general scheme of it was submitted to the Legislature, which knew

that the contract was to be made with the Cooperage Company, which on the faith of it was to expend large sums of money in erecting mills for sawing and using the timber and wood cut upon the lands, and that it was to continue during the terms of the grant and contemplated the removal of all the timber from the land within that time. Neither the Cooperage Company nor the state, under all the circumstances, can claim that in making the contract Cornell University acted beyond its authority and without the consent of the state. It was optional with the state from year to year to make such appropriation as it deemed necessary and proper for the experiments in forestry, and without the appropriations, unless the proceeds from the timber which were substantially appropriated by the state for that purpose were sufficient, active operations upon the land must cease temporarily, as it was not expected that the university was to use its own funds to carry on the experiment. The company knew that the ability of the university to cut timber depended entirely upon the appropriation from the state and upon the profits which the university might realize by delivering to it the timber and the wood under the contract. If its contract with the university was too favorable to it and to the disadvantage of the university so that with the increasing price of labor, supplies, and timber values, the university was delivering timber and wood at a loss, then it knew that the very terms of its contract might tend to deprive the university of one of the two only possible sources from which it could obtain the means of carrying on the work. Perhaps the low price at which it was to receive the timber and wood from the university is one of the principal causes which rendered it impossible for the university to continue to supply them. The university has not violated its contract with the state or the company.

The legislation which resulted in the agreement with the university indicates the fixed public policy of the state that these lands for 30 years shall not become a part of the forest preserve, but shall be used solely for forestry purposes. The mere fact that for a time appropriations have not been made for carrying on the experiments upon this land does not indicate a change of the public policy of the state. Each Legislature must determine what appropriation shall be made for the year, and various circumstances may render it expedient for a year or for several years to omit an appropriation for this purpose. But an omission for one or several years does not establish a changed public policy and does not show that the experiment has been abandoned or that other Legislatures will fail to make an appropriation. The Attorney General, acting alone, cannot upset a fixed public policy of the state. He cannot turn land into the forest preserve which the Legislature has said shall not be a part of the forest preserve. The state has so placed these lands that they cannot become a part of the forest preserve during the 30 years without the act of the Legislature, the university, and the Cooperage Company, or without the act of the Legislature and proof that the university has violated its agreement with the state and thereby forfeited its interest in the lands.

It is true that the university has not appealed. Evidently its relations with the state are such that an appeal was deemed inadvisable.

Whatever interest the Cooperage Company has in the premises is derived from the university, and, if this judgment requiring a conveyance to the state stands, the company loses all further interest in the timber and wood which may be cut from the land, and it may be questionable at least whether its mill and improvements are not entirely lost to it. It is therefore in a position to claim that such judgment is erroneous and to ask its reversal. I favor a modification of the judgment by striking therefrom the requirement that Cornell University convey the lands to the state and by qualifying the injunction clauses so that they shall read until the Legislature shall make further appropriations therefor, and as so modified the judgment should be affirmed.